Ryan Volk for Appellant Thomas Moore. This case turns on whether appellees acted with deliberate indifference. And if they did, if they're entitled to qualified immunity, where they deprived appellant exercise for 610 days. Now, during a substantial period of this 610 days, appellant submitted evidence, affirmative evidence, in connection with the summary judgment motion that he was continually confined to a cell essentially 24 hours a day, with the exception of three times a week when he was able to take a shower. Why was he so confined? Well, he was confined because there's also a dispute in the record about that. He swore out a declaration, which I believe he submitted and supported the motion for summary judgment, that said he was assigned to the C status. There's no doubt he was on C status. That's correct. And there are prison rules, regulations, whatever you want to call them, that says, a person on C status, here's the way we deal with them. Exactly. And the individuals you're trying to hold responsible in this case were simply following those rules and regulations related to a person on C status. That's correct. So what you're doing is complaining about C status. Well, there's actually two separate issues that I'm trying to explain. First, there's the issue about the policy operational procedure number 11, which basically sets forth that C status inmates won't have any access to the yard. You see, the problem here is you're trying to sue individuals, or an individual, right? Correct. And this is an individual following the C status rules, and so I don't see how you can argue that a reasonable person in that person's position would have understood that C status rules was a constitutional violation. I mean, this is exactly what qualified immunity is all about. I understand. Then the second point that I'd like to make is that if that is the case indeed, that they're just following the policy, there's evidence in the record that they were aware that he was also being denied, which was not part of the C status policy, of out-of-cell activity. There's two issues going on. One is that OP11, which mandates essentially that they will not have, the inmates will not have outdoor exercise, but they will have seven to ten hours of out-of-cell activity. Well, the record indicates, in connection with the motion for summary judgment, the appellant presented evidence that he wasn't getting that seven to ten hours a week. In fact, he was only getting about three hours a week for showers. Well, wasn't that during the lockdown period when there was the riot within the prison, the gang activity, and the prison was forced for security reasons to place limitations on all activity of all inmates? That's correct, Your Honor. However, I would point out that that lockdown was over a year. Now, certainly, if it appears that it was a gang riot, you would think that cooler heads would prevail over a year. You ever been in one of these prisons and seen how these gangs deal with each other? I actually have been in prison. Not myself, but I have been to it. So you understand how these things, they don't end. These gangs don't declare truces. It's like Baghdad. But assuming even if that is true, Your Honor, assuming even if that is true, under the authority in Spain, and I believe the pinpoint site is at 200, it basically says, okay, there's a legitimate security concern. But at the same time, you still need to provide exercise to appellants or make some sort of effort to provide some sort of exercise. I mean, he was denied. Counsel? Yes. Just help me out on the history of this. Was there an injunction entered against the policies?  At some point? There was not an injunction. They went through the three levels of appeals through the prison administrative system. Then they went to they filed a writ of habeas with the Monterey Superior Court. The Monterey Superior Court reviewed the petition and issued an order to show cause. When the order to show cause was issued, the appellees changed the operational procedure number 11 and ended up providing the C-status inmates, I believe, exercise three hours a week. Outside. Outdoor exercise. Right. Three hours of outdoor. So the problem. So that the only question here with respect to the C-status has to do with the liability of the individuals? Yes. For implementing the policy that was changed after the litigation? Well, I think, again, there's two issues that I'd like to bring out. One is certainly just the enforcement of the C-status policy. As you pointed out, perhaps, if they're just following or enforcing a policy from top down, there may not be an issue there. However, there could be an issue with the warden regarding supervisory liability. But putting those issues aside, I think what is more interesting is when you look at the totality of the circumstances, given that the appellant presented affirmative evidence about the conditions of his confinement and the district court seemed to ignore that. And I draw your attention to the first-level appeal. Let me see here. It is in, pardon me. Oh, here it is. I apologize. It's the excerpt of the record at page 45. I'll draw your attention to the sentence, the second sentence beneath the title, summary of investigation. It says, Inmate Dews stated he wants yard to compensate for no walking time due to modified program and being self-fed. So here's a recognition, and this is dated May 22nd. The prison riot happened, I believe, in mid-November. Here's a recognition that basically six months later, they're still not getting exercise, they're still being self-fed, and they're not getting any time to walk to the dining halls. So under these facts, and I think under the cases have shown, Spain, Lopez, Sakai, Allen, that any deprivation longer than six weeks under circumstances similar to this constitutes an Eighth Amendment violation. Where's the subjective component, though, that an individual needs to have in order to proceed? Well, the subjective component in that analysis, and I'll remind the Court that it is a factual analysis, and this is a summary judgment case. Yes, but you don't have any evidence at all to generate a genuine issue of material fact on the subjective prong. It's the problem that I have with the record. Well, I would disagree with that. I think if the risk is obvious, under the ‑‑ Negligence and gross negligence isn't enough. You know what the subjective requirement requires. Yes, I do. Under the test for deliberate indifference, which is a subjective component of the Eighth Amendment, it requires knowledge of a substantial risk to the inmate. And here there was evidence, given the conditions under the authority of the Ninth Circuit, that that was probably an Eighth Amendment violation. But more importantly, they alleged in the writ of habeas petition that there were health effects. They alleged that there was, let's hear, situational depression. My client in particular alleged that he was seeing a psychiatrist and he had attributed it to his denial of out ‑‑ Well, wait a second. You're saying that there were allegations. I mean ‑‑ I say it correctly. It's sworn under declaration. Affirmative evidence. And that evidence, Your Honors, is that ‑‑ Again, you keep pointing to the second prong, but where's the subjective knowledge on the part of the warden? Well, the warden was CC'd on the final, the director, the third level. He was CC'd, but where's the subjective component of it? Well, as to the warden ‑‑ Well, you've got to show some subjective component, you know, malicious intent, that kind of stuff, to be able to get you past your problem in this case. And, see, counsel, it seems to me that if we look at the jurisprudence in the Eighth Amendment area, that the cases, at least as I read them, Spain and Toussaint and Alma v. Sakai and cases in that line of authority, all seem to deal with much more egregious types of situations that ‑‑ such that the objective component itself would give rise to an inference that might support a finding on the subjective component. But here we've got an inmate who walks in, says, I don't want to participate in certain programs, I'm willing to accept C status, goes on C status, which is a policy within the prison, it's a matter which we, you know, recognize gets litigated. There's disputes about it and what it means and its breadth and so forth. There's a modification of the policy. In those circumstances, can we really say that this record supports even the existence of a material factual dispute on deliberate indifference? I would say yes. And you're referring to the Lamer case regarding the inmate being the master of his own fate. It's your neutral loaf. I remember the Lamer case. I'm sorry, Your Honor? Never mind. I remember the Lamer case. And, you know, just three quick points on the Lamer case, why I think it's distinguishable. First of all, the inmate there was extraordinarily violent. He actually had a history of attacking two correctional officers in the actual exercise yard. Furthermore, that case has been, in Sakai, they try to apply that analogy that, you know, hey, you're the master of your own fate. And the court basically rejected it. And then, finally, I would point out that it is dicta. It hasn't been, as far as I understand, adopted as an affirmative holding. And I see that I'm out of time. Thank you, counsel. We'll hear from the other side. Good morning, Your Honor. Julianne Mossler for the Attorney General's Office representing Appalese. If it please the Court, neither component of the Eighth Amendment test has been met in this case. In the first component, the objective component of the test, the evidence only shows that defendants were liable for a denial of yard for 30 days to Mr. Moore. After 30 days, when he was placed on c-status, after 30 days he could request a modification of his classification, and if that were granted, he could go back to yard. So after that first 30 days, all of the power about whether Mr. Moore got yard was within his hands. On the second prong, on the subjective component, the test was not met. Again, because Mr. Moore had control over whether he got outdoor exercise, defendants vested him with that control. And because his conditions of confinement were not harsh. And, finally, defendants are entitled to qualified immunity because most of the cases dealing with denial of yard time have addressed the issue in terms of a long-term denial of yard time, coupled with very harsh conditions of confinement. Now, when Mr. Moore was initially placed on c-status, as you noticed, he agreed to the c-status, preferring instead to work on his considerable legal projects in his cell. During that first portion of the time that Mr. Moore was on c-status, between June and when the riot happened in November, he got considerable out-of-cell time. He was allowed to go to the day room. He was allowed to leave his cell for showers. He got to walk across the yard for meals. He had opportunities for education and testing, which I don't know if he took advantage of those. Interviews, medical appointments, and the substantial library time that he needed to pursue his litigation. In addition, he was not isolated from other inmates. There's no evidence that he was living in an atmosphere of fear or apprehension or that his conditions of confinement were particularly degrading. He was offered programs of education and rehabilitation, which he refused. And all he had to do to alleviate these conditions of his confinement where he wasn't getting to yard was to obey the rules and request a reclassification. During the period of time, the initial period of time between June and November, he never filed a 602. He never filed an inmate grievance about those conditions that he was under at that time. So I think that's pretty clear evidence that he didn't object to that, that portion of his confinement. I think where he has the problem is after the November riot. And this Court in Jordan v. Gardner said that in order to satisfy the subjective component in the Eighth Amendment test, a plaintiff must produce evidence showing that defendants' actions were both unnecessary and wanton. Then later that year in Lamar v. Moss, this Court relied on the Supreme Court's findings to determine whether that level of conduct satisfies the Eighth Amendment requirement of wantonness. And it found at that time that when a prison security measure is undertaken to resolve a disturbance such as a riot, the proper inquiry is whether the actions were taken in a good-faith effort to restore and maintain discipline or maliciously and sadistically for the purpose of causing harm. Now, I note in Mr. Moore's reply brief that he makes an unsupported assertion that the lockdown was simply a pretext to keep him confined, but there's no evidence to suggest that defendants locked down hundreds of inmates just to target Mr. Moore. And then after the riot, when the Facility B, I'm sorry, when Facility B went on modified programs, C-status inmates were given 3 hours each week of out-of-cell activity. Now, a 6-month, a year and a half on a modified program following a prison riot is not extraordinary, and there's no evidence to suggest that it is. So I would say that if we're looking at the two portions of Mr. Moore's claim, the first section dealing with before the riot, there's no deliberate indifference. He hasn't shown any deliberate indifference because defendants gave him the ability to get to yard after 30 days, and he didn't take it. After the riot, defendants were justified in placing the facility on lockdown while they conducted their investigations and did what they needed to do to ensure institutional safety and security. There's no evidence that they imposed the lockdown because they were being malicious or intending to cause Mr. Moore harm. And if there are no questions? No. Thank you, counsel. Thank you. Mr. Polk will give you an opportunity to respond if you care to take it. I would like to reserve the rest of my time. Can I do that? No. I'm sorry. Just very briefly, there was an assertion that there was an unsupported assertion that he claimed it was pretext. I cite two things regarding that. First of all, on page 140 of the excerpts of record, the inmate, the jailhouse lawyer who is essentially an inmate representing them, uses the phrase so-called riot. I think a fair inference is that that's a bit of sarcasm and that it suggests that there's pretext. That's evidence of pretext. Sarcasm on the part of a jailhouse lawyer? Really? Furthermore, on page, in the writ, they also state that the lockdown was arbitrary and capricious. OK. Anything else, Mr. Polk? That's all. Thank you. If not, we want to thank you for- Can I just ask one question? Yes. Is there anything here that indicates that after the riot, Mr. Moore was treated differently than other people with respect to the lockdown? I'm not aware of any evidence in the record that suggests that he was treated, other than being on C-status, differently than other C-status inmates. Right. OK. Thank you. Mr. Polk, we want to thank you for taking this case as part of our pro bono representation project. You've done a very fine job on behalf of your client. We appreciate your assistance. Thank you. The case just argued is ordered submitted.
judges: Schroeder, Trott, Feess